**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| HET MCPS, LLC and<br>HEF-P BALTIMORE CITY, LLC, | * |
| | * |
| *Plaintiffs*, | |
| | * |
| v. | Civil Action No. RDB-24-3366 |
| | * |
| AUTOFLEX, INC. and<br>LUIS MACDONALD | * |
| | |
| *Defendants*. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

Through the instant litigation, Plaintiffs HET MCPS, LLC ("HET MCPS") and HEF-P Baltimore City, LLC ("HEF-P Baltimore") (collectively, "Plaintiffs") pursue five claims in tort against Defendants AutoFlex, Inc. ("AutoFlex") and its president and owner, Luis MacDonald ("MacDonald") (collectively, "Defendants"). (ECF No. 3 ¶¶ 141–170.)[1] In brief, Plaintiffs allege that following AutoFlex's unsuccessful bid to electrify the school bus fleet for Montgomery County Public Schools ("MCPS"), AutoFlex and MacDonald have unlawfully attempted to undermine HET MCPS's contract with MCPS and have interfered with Plaintiffs' customer relationships, including through legal challenges, through spreading misinformation about Plaintiffs, and through exploiting MacDonald's role within a nonprofit, all in an attempt to reopen the bidding process and pressure MCPS into converting the single award contract into a multi-award contract to benefit AutoFlex.

---

[1] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Order cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

(*Id.*¶¶ 20–140.)   HET MCPS also seeks declaratory relief under 28 U.S.C. §§ 2201, 2202, essentially requesting that this Court declare that AutoFlex cannot be added to the existing MCPS contract or reopen the request for proposal.   (*Id.* ¶¶ 171–186.)

Since this litigation was filed in late November 2024, several motions have been filed, including, but not limited to, two rounds of motions for clerk's entry of default (ECF Nos. 17; 31; 34); motions for sanctions filed by both sides (ECF Nos. 32; 33; 39; 45); a motion for forensic imaging (ECF No. 46); and a motion to compel compliance with non-party subpoenas (ECF No. 47).   On June 4, 2025, this Court held a motions hearing to address three of the four motions[2] presently pending: (1) Plaintiffs' Corrected Second Request for Entry of Default Against Defendants (ECF No. 34); (2) Plaintiffs' Motion for Sanctions of Default Against Defendant Luis MacDonald (ECF No. 45); and (3) Plaintiffs' Motion for Forensic Imaging (ECF No. 46).

As explained on the record and for the reasons further explained below, Plaintiffs' Corrected Second Request for Entry of Default Against Defendants (ECF No. 34) is **DENIED AS MOOT**, in light of Defendants' belatedly filed Answer (ECF No. 43); (2) Plaintiffs' Motion for Sanctions of Default Against Defendant Luis MacDonald (ECF No. 45) is **DENIED**, in light of Defendants' confirmation that the responses to Plaintiffs' request for documents and interrogatories were responsive on behalf of both Defendants; and (3) Plaintiffs' Motion for Forensic Imaging (ECF No. 46) is **GRANTED** without opposition, subject to the modification that Plaintiffs agree to bear the cost of imaging in

---

[2]  Plaintiffs' Motion to Compel Compliance with Subpoenas Issued to Non-Parties Antoine Thompson and the Greater Washington Region Clean Cities Coalition (ECF No. 47) remains pending further briefing.

the first instance, but reserve all rights to later seek to recover costs and expenses associated with the Imaging Motion, including (but not limited to) recovering costs and expenses based on further discovery violations and/or evidence of spoliation, and the forensic imaging should, if possible, be done remotely or, if not remotely, onsite at the Defendants' place of business to avoid any undue burden to Defendants.

In addition to addressing the three aforementioned motions, the Court discussed the parties' ongoing discovery dispute, as well as the need to modify the scheduling order presently governing this case (ECF No. 27). This Memorandum Order memorializes the Court's discussion of the parties' ongoing discovery dispute, and further modifies the scheduling order as outlined below.[3]

| Event | Current Date (ECF No. 27) | Revised Date |
|---|---|---|
| Plaintiffs' Rule 26(a)(2) disclosures | June 27, 2025 | September 26, 2025 |
| Defendants' Rule 26(a)(2) disclosures | July 25, 2025 | October 24, 2025 |
| Plaintiffs' rebuttal Rule 26(a)(2) disclosures | August 22, 2025 | November 7, 2025 |
| Rule 26(e)(2) supplementation of disclosures and responses | August 29, 2025 | November 14, 2025 |
| Discovery deadline; submission of status report | September 26, 2025 | December 15, 2025 |
| Requests for admission | October 10, 2025 | January 9, 2026 |
| Dispositive pretrial motions deadline | October 24, 2025 | January 23, 2026 |
| Opposition to dispositive pretrial motions deadline | November 7, 2025 | February 6, 2026 |
| Replies in support of dispositive pretrial motions deadline | November 21, 2025 | February 20, 2026 |
| Motions hearing | Not provided in Order | To be scheduled (if necessary) by further |

---

[3] The Court notes that some of these dates are different than those provided during the hearing. The Court found it appropriate to modify these dates such that the deadlines better matched the pacing set forth in this Court's previous scheduling orders (ECF Nos. 24; 27) and such that deadlines did not fall on weekends.

| | | correspondence from this Court |
|---|---|---|
| Pretrial conference | Not provided in Order | April 14, 2026 at 3:00 PM |
| Jury trial (5–7 days estimated) | Not provided in Order | Commencing April 20, 2026 at 9:30 AM |

## ANALYSIS

### I.    Plaintiffs' Second Corrected Request for Entry of Default Against Defendants (ECF No. 34)

On April 29, 2025, Plaintiffs filed the pending Corrected Second Request for Entry of Default Against Defendant (ECF No. 34), which "request[s] that the Clerk enter default against Defendants" for failure to timely respond to the First Amended Complaint ("FAC") (ECF No. 30).    Pursuant to Fed. R. Civ. P. 15(a)(3), Defendants' response was due April 21, 2025, though Defendants did not respond to the FAC until May 11, 2025, after this Court twice extended the deadline for Defendants to respond.    (ECF Nos. 35; 40; 43.)

Entry of default and motions for default judgment are governed by Fed. R. Civ. P. 55.    Requests for a clerk's entry of default are addressed in Rule 55(a), which provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."    If the clerk enters a default, the party may seek a default judgment under Rule 55(b).    Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules."    *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).    The Fourth Circuit has a "strong policy that cases be decided on the merits."    *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Nevertheless, default judgment may be appropriate when the "adversary process has been halted because of an essentially unresponsive party."    *Sec. & Exch. Comm'n v. Lawbaugh*, 359

F. Supp. 2d 418, 421 (D. Md. 2005).

As explained on the record, Plaintiffs' Request for Entry of Default Against Defendant (ECF No. 34) is now moot, as Defendants have since filed an Answer to the FAC (ECF No. 43).  Of course, Defendants' Answer to the FAC was filed 20 days after the deadline set forth in Fed. R. Civ. P. 15(a)(3), and this Court twice extended time to respond, though Defendants initially resisted this Court's instruction to respond to the FAC.  (ECF Nos. 35; 39; 40.)  As noted, the Fourth Circuit adheres to a "strong policy" that "cases be decided on the merits." *Dow v. Jones*, 232 F. Supp. 2d 491, 494–95 (D. Md. 2002) (citing *Shaffer Equip. Co.*, 11 F.3d at 453).  Moreover, it is implausible that Plaintiffs suffered any prejudice from this delay.  Accordingly, Plaintiffs' Corrected Second Request for Entry of Default Against Defendant (ECF No. 34) is **DENIED AS MOOT**.

## II. Plaintiffs' Motion for Sanctions of Default Against Defendant Luis MacDonald (ECF No. 45)

On May 19, 2025, Plaintiffs filed a Motion for Sanctions of Default Against Defendant Luis MacDonald (ECF No. 45), which attempts to provide a separate and independent basis for Plaintiffs' request for entry of default, but only against the Individual Defendant MacDonald and under Federal Rule of Civil Procedure 37.[4]  As background, Plaintiffs served discovery on Defendants on March 21, 2025, (ECF Nos. 45-4; 45-5; 45-6;

---

[4] Pursuant to Rule 37, a district court may impose sanctions, including default judgment, on "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34 , fails to serve its answers, objections, or written response."  *See* FED. R. CIV. P. 37(d)(1)(A)(ii).  The Court notes that the Fourth Circuit has emphasized that default judgment is a severe sanction and a district court's discretion in imposing default judgment pursuant to Rule 37 is "narrow."  *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citation omitted).  The Fourth Circuit has made clear, the sanction of default judgment must not be imposed for "general misbehavior," but instead "confined to the flagrant case in which it is demonstrated that the failure to [comply with a discovery order] materially affects the substantial rights of the adverse party and is prejudicial to the presentation of his case." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977) (citation and quotation marks omitted).

45-7; 45-8 at 3), meaning Defendants' responses to discovery were due on April 21, 2025,

pursuant to Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2). Plaintiffs followed up

with defense counsel regarding the outstanding discovery on May 5, 2025, (ECF No. 45-8

at 2–3), and the following day, defense counsel served responses, (ECF Nos. 45-9; 45-10)—

though it is Plaintiffs' position that these responses were only from Defendant AutoFlex.

(ECF No. 45-1 at 6–8.) During the hearing, defense counsel confirmed that the responses

to Plaintiffs' request for documents and interrogatories were responsive on behalf of both

Defendants. As such, there is no basis for imposing default judgment pursuant to Federal

Rule of Civil Procedure 37. Plaintiffs' Motion for Sanction of Default Against Defendant

Luis MacDonald (ECF No. 45) is **DENIED**.

### III.    Plaintiffs' Motion for Forensic Imaging (ECF No. 46)

Through their Motion for Forensic Imaging (ECF No. 46), Plaintiffs contend that

Defendants have failed to comply with their discovery obligations and request that "the Court

permit third-party forensic imaging of relevant electronic devices (e.g., computers and phones

used by AutoFlex and its principal, MacDonald) and associated email accounts" and that

AutoFlex bear the cost of this imaging. (*Id.* at 1; ECF No. 46-1 at 11–27.) In their response,

Defendants note "both Mr. MacDonald and AutoFlex would consent to forensic imaging at

the expense of Plaintiffs"—that is, Defendants are agreeable to forensic imaging of their

devices, but they take the position that Plaintiffs should bear the cost. (ECF No. 48 at 5.) In

the Joint Status Report, Plaintiffs provide:

> If Defendants otherwise consent to the relief sought in the Imaging Motion,
> Plaintiffs would be wiling [sic] to modify the Imaging Motion's provision for
> costs (to address the Opposition's request) as follows: Plaintiffs agree to bear
> the costs of imaging in the first instance, but reserve all rights to later seek to

recover costs and expenses associated with the Imaging Motion, including (but not limited to) recovering costs and expenses based on further discovery violations and/or evidence of spoliation.

(ECF No. 49 at 3.)  The parties confirmed their agreement on the record at the hearing, and further confirmed that any forensic imaging should, if possible, be done remotely, or, if not remotely, onsite at the Defendants' place of business to avoid any undue burden to Defendants.  As such, Plaintiffs' Motion for Forensic Imaging (ECF No. 46) is **GRANTED** as unopposed, subject to the aforementioned modification that "Plaintiffs agree to bear the cost of imaging in the first instance, but reserve all rights to later seek to recover costs and expenses associated with the Imaging Motion, including (but not limited to) recovering costs and expenses based on further discovery violations and/or evidence of spoliation" and the forensic imaging should, if possible, be done remotely or, if not remotely, onsite at the Defendants' place of business to avoid any undue burden to Defendants.

## IV.    Discovery Dispute

While the parties did not request a discovery conference with the Court as provided in the Court's informal discovery letter (ECF No. 24-1),[5] the Court found it prudent—based on the substance of the Plaintiffs' arguments set forth in their Motion for Forensic Imaging (ECF No. 46)—to discuss the parties' ongoing discovery dispute during the hearing.  The parties noted that some of the alleged deficiencies have been or may have been resolved by a subsequent production provided to Plaintiffs on May 30, 2025, but Plaintiffs indicated that it anticipated some materials remained outstanding and Defendants confirmed their willingness to work towards resolving any discrepancies.  The Court endeavors to briefly summarize its

---

[5]  The parties are instructed to follow the procedures set forth in the Court's informal discovery letter (ECF No. 24-1) should further Court intervention regarding a discovery dispute become necessary.

rulings regarding the ongoing discovery dispute below.

### A. Standard Document Request No. 2

Through Standard Document Request No. 2, Plaintiffs request "All insurance policies under which a person carrying on an insurance business might be liable to pay to you or on your behalf all or part of the damages sought in this action." (*See* ECF Nos. 46-4 at 7; 46-5 at 7.) Through their joint "Response to Request No. 2," Defendants indicated that "AutoFlex, Inc. has multi-million-dollar liability coverage with Liberty Mutual insurance Policy Number BZS65399366 expires October 15, 2025. The agent is HBW Insurance." (ECF No. 46-9 at 3.) While Plaintiffs complained that Defendants initially failed to produce the mentioned policy, (ECF No. 46-1 at 11–12), counsel of record confirmed that the policy has since been provided, thus resolving the dispute concerning Standard Document Request No. 2.

### B. Standard Document Request No. 3

Through Standard Document Request No. 3, Plaintiffs request "All documents received from or provided to any other party to this action or received from any third-party since the filing of the Complaint, whether provided informally or in response to a formal request." (ECF Nos. 46-4 at 7; 46-5 at 7.) Through their joint "Response to Request No. 3," Defendants noted "Forwarded the filed complaint to Greater Washington Region Clean Cities Coalition (GWRCCC) and Executive Director responded to Plaintiff's request directly for information." (ECF No. 46-9 at 3.) Plaintiffs complain that Defendants have failed to produce responsive documents and/or communications—that is, documents and/or communications forwarding the complaint to the Coalition. (ECF No. 46-1 at 12.) The Court instructed Defendants to provide responsive documents and/or communications to Standard

Document Request No. 3 within fifteen days of the June 4, 2025 hearing—i.e., by June 19, 2025—and defense counsel confirmed that he would do so.

### C. Standard Document Request No. 4

Through Standard Document Request No. 4, Plaintiffs request "All documents referred to in the Complaint and other pleadings, as the word 'pleadings' is defined in Fed. R. Civ. P. 7(a)." (ECF Nos. 46-4 at 7; 46-5 at 7.) Through their joint "Response to Request No. 4," Defendants wrote: "State of Maryland Court of Appeals Opinion and Order for an MCPS Judicial Review (See Exhibit No. 6)[.]" (ECF No. 46-9 at 4.) Plaintiffs contend that Defendants should have provided documents and communications referred to in the Complaint (ECF No. 1) and FAC (ECF No. 30), as well as Defendants' answers (ECF Nos. 20; 21; 43). (ECF No. 46-1 at 12–14.) Plaintiffs list the following documents:

(1) the September 1, 2020 Montgomery County Public School ("MCPS") request for proposal (ECF No. 30 ¶ 24);

(2) AutoFlex's responses to the request for proposal (*id.*);

(3) the December 9, 2020 pre-award notice issued by MCPS (*id.* ¶ 28);

(4) the Montgomery County Office of the Inspector General documents (*id.* ¶¶ 40–52);

(5) various news articles involving MacDonald (*id.* ¶¶ 53–58);

(6) the letter purportedly from the Coalition (*id.* ¶¶ 98–105);

(7) a "February 17, 2023 email from MacDonald to consultant" (*id.* ¶ 110);

(8) an "October 3, 2024 email from MacDonald to Baltimore County Public Schools" (*id.* ¶¶ 119–121);

(9) the "recent statements of Montgomery County Superintendent Thomas W. Taylor" (ECF No. 43 at 3);

(10) the "two page response of the Montgomery County School Board to the Court of Appeals sixty six (66) page opinion" (*id.*);

(11) the Coalition letter (*id.*);

(12) documents and communications relating to the statement "Counsel for defendants spoke to Executive Director Thompson who said he authorized his signature on the letter and said that representatives of Highland had requested a letter from him stating the opposite and he had refused" (*id.*); and

(13) an article from *Bethesda Magazine* (*id.* at 7–9).

(ECF No. 46-1 at 13–14.)  To the extent these documents have not been produced through Defendants' supplemental productions, Defendants are instructed to provide them to Plaintiffs.

### D. Standard Document Request No. 5

Through Standard Document Request No. 5, Plaintiffs request "All statements (as that term is used in Fed. R. Civ. P. 26(b)(3)(C)) which were previously made by this party [i.e., You] and any of its [i.e., Your] present or former directors, officers, or employees, concerning the action or its subject matter."  (ECF Nos. 46-4 at 8; 46-5 at 8.)  Through their joint "Response to Request No. 5," Defendants wrote:

> The only statement on this matter is that Luis MacDonald did not attend the GWRCCC conference contrary to the filed complaint alleging that Luis MacDonald had spoken to panel speakers and attendees in regard to Plaintiff. HET MCPS complaint is incorrect.  HET complaints have also damaged the reputation of AutoFlex, Inc. and Luis MacDonald.

(ECF No. 46-9 at 4.)  Plaintiffs contend that that is not the "only statement" responsive to this request, emphasizing allegations in the FAC that detail statements MacDonald has made concerning the subject matter of this action, as well as MacDonald's comments in the media about this action and the underlying subject matter.  (ECF No. 46-1 at 14–15.)  As discussed on the record, the discovery dispute relating to Standard Document Request No. 5 is now moot.

### E. Document Request No. 6

Through Document Request No. 6, Plaintiffs request "To the extent not covered by Standard Document Request Nos. 1 to 5, all Documents and Communications concerning Highland Electric Fleets or any of its affiliates, including (but not limited to) HET MCPS,

LLC, HEF-P Baltimore City, LLC, or HEF-P Manassas, LLC."  (ECF Nos. 46-4 at 8; 46-5 at

8.)  Through their joint "Response to Request No. 6," Defendants wrote:

> The only documents and communication concerning Highland Electric Fleets
> or any affiliate are on the public record based on our protest of the MCPS
> Electric School Bus contract awarded to HET MCPS LLC et al. going on four
> years ago and is on-going today.
>
> MCPS also issued a 2024 request for information (RFI) on the State of Maryland
> online eMMA procurement portal inviting AutoFlex, Inc. to respond for
> purpose of an MCPS continued implementation of electric school bus contract
> with a new vendor that could perform as per MCPS 9462.2 requirements to
> replace the MCPS 9462.1 contract.  This was the reason that GWRCCC letter
> of support for RFI was requested.  (See Exhibit 7)[.]

(ECF No. 46-9 at 5.)  While Plaintiffs contend that this answer is insufficient, (ECF No. 46-1

at 15–16), as explained on the record, finds Defendants' response satisfactory, for now.

### F.  Document Request No. 7

Through Document Request No. 7, Plaintiffs request:

> To the extent not covered by Standard Document Request Nos. 1 to 5, all
> Documents and Communications concerning the use of Coalition letterhead
> for correspondence concerning You and/or [AutoFlex/MacDonald], including
> (but not limited to) the following illustrative examples:
>
>> a. the October 5, 2020 letter on Coalition letterhead addressed to Laly
>> A. Bowers, Procurement Unit, MCPS;
>>
>> b. the September 16, 2024 letter on Coalition letterhead and bearing a
>> typewritten signature for Antoine M. Thompson, the CEO / Executive
>> Director of the Coalition, addressed to Karla Silvestre, President of the
>> Board of Education for MCPS;
>>
>> c. the January 29, 2025 letter on Coalition letterhead and bearing a
>> typewritten signature for Antoine M. Thompson, the CEO / Executive
>> Director of the Coalition, addressed to the Hon. Richard D. Bennett[.]

(ECF Nos. 46-4 at 8; 46-5 at 8.)  Through their joint "Response to Request No. 7," Defendants

wrote:

    a. . . . AutoFlex, Inc. requested a GWRCCC letter of support for MCPS RFP[.]

    b. . . . AutoFlex, Inc. requested a GWRCCC letter of support to amend RFP 9462.1 into multiple-award contract to include MFD participation excluded by MCPS error.

    c. . . . GWRCCC letter was requested from Antoine Thompson, executive director by AutoFlex Legal Counsel Arthur McGreevey to serve as evidence that the alleged forgery of signature on the September 16 letter of support was not a forgery and Luis MacDonald is currently the elected GWRCCC Treasurer.

(ECF No. 46-9 at 5–6.)  Plaintiffs contend that AutoFlex failed to produce the referenced correspondence.  (ECF No. 46-1 at 16–17.)  As discussed on the record, the Court modifies Document Request No. 7 such that it is directed at MacDonald, "To the extent not covered by Standard Documents Request Nos. 1 to 5, all Documents and Communications concerning your authorship and/or use of Coalition letterhead for correspondence concerning Plaintiffs."

### G. Document Request No. 8

Through Document Request No. 8, Plaintiffs request:

To the extent not covered by Standard Document Request Nos. 1 to 5, all Documents and Communications concerning your employment or involvement with the Coalition, including (but not limited to) any employment agreement. For the avoidance of doubt, this request includes all Documents and Communications concerning the scope of your authority regarding your work with the Coalition, including (but not limited to) resolutions appointing you to any position, employment agreements, organizational handbooks or policies, and/or conflicts-of-interest disclosures.

(ECF Nos. 46-4 at 8–9; 46-5 at 8–9.)  Through their joint "Response to Request No. 8," Defendants wrote:

Luis MacDonald is a volunteer of the GWRCCC and has been a charter stakeholder and Board of Directors member of several Clean Cities Coalitions since 1993. Clean Cities Coalition Letters of Support are a common request by stakeholder members that prepare and submit proposals on RFP, RFI and other bid opportunities.

(ECF No. 46-9 at 6.)  Plaintiffs contend that Defendants failed to produce documents and communications responsive to this request, noting that they understand that the Coalition maintains conflicts of interest policies and disclosures, which AutoFlex has not yet provided. (ECF No. 46-1 at 17–18.)  As explained on the record, the Court finds that this is a perfectly appropriate inquiry, and notes that to the extent that any such policies exist, they should be disclosed to Plaintiffs.

### H. Document Request 9

Through Document Request No. 9, Plaintiffs request "To the extent not covered by Standard Document Request Nos. 1 to 5, all Documents and Communications concerning your contributions, donations, or other payments to the Coalition or payment made by you on behalf of the Coalition.  (ECF Nos. 46-4 at 9; 46-5 at 9.)  Through their joint "Response to Request No. 9," Defendants indicate: "AutoFlex is a Service-Disabled Veteran Owned Business that contributes an annual membership fee of $1,000 to participate in the mission of GWRCCC and serve as a volunteer in support of alternative fueled transportation and fleet electrification."  (ECF No. 46-9 at 7.)  Plaintiffs complain that Defendants are treating this request for documents as an interrogatory, (ECF No. 46-1 at 18), and during the hearing, Defendants indicated a willingness to supplement their response.  Accordingly, the Court sees no reason to further address the parties' dispute concerning Document Request 9.

### I.  Document Request 10

Through Document Request No. 10, Plaintiffs request "To the extent not covered by Standard Document Request Nos. 1 to 5, all Documents and Communications concerning the Coalition directly or indirectly supporting you and/or [AutoFlex/MacDonald], including (but

not limited to) the Coalition providing letters of support, references, or memoranda or white papers." (ECF Nos. 46-4 at 9; 46-5 at 9.) Through their joint "Response to Request No. 10," Defendants indicate: "Luis MacDonald is a volunteer of the GWRCCC and has been a charter stakeholder and Board of Directors member of several Clean Cities Coalitions since 1993. Clean Cities Coalition Letters of Support are a common request by stakeholder members that prepare and submit proposals on RFP, RFI and other bid opportunities[.]" (ECF No. 46-9 at 7.) While Plaintiffs complain that Defendants failed to produce documents and communications responsive to this request, and at a minimum, Defendants should have produced the Coalition's "letters of support" and related documents and communications, (ECF No. 46-1 at 18–19), the Court notes that no further production from Defendants is necessary at this stage, as such documents are likely to be produced by the Coalition.

### J.  Document Request 11

Through Document Request No. 11, Plaintiffs request:

> To the extent not covered by Standard Document Request Nos. 1 to 5, all Documents and Communications concerning: (a) MCPS (including, but not limited to, Request for Proposal Number 9462.1); (b) the Board of Education of Baltimore City, Maryland; (c) the Baltimore City Board of School Commissioners; and/or (d) the Manassas City School Board."

(ECF Nos. 46-4 at 9; 46-5 at 9.) Through their joint "Response to Request No. 11," Defendants indicate: "The documents and communications concerning MCPS RFP 9462.1 are all on the public record and the related MCPS contract award incorporated a MWCOG Rider Clause that allowed Baltimore City and Manassas City to 'piggyback' the electric school bus contract awarded to HET MCPS LLC under MCPS procurement authorized ordering." (ECF No. 46-9 at 8.) Plaintiffs complain that the Defendants' response presupposes that all

documents are in the "public record," (ECF No. 46-1 at 19–20), and during the hearing, Defendants agreed to supplement their response.  Accordingly, the Court sees no reason to further address the parties' dispute concerning Document Request 11.

### K.  Document Request 12

Through Document Request No. 12, Plaintiffs request: "To the extent not covered by Standard Document Request Nos. 1 to 5, all Communications between you and/or [AutoFlex/MacDonald] and news media entities or representatives (e.g., journalists, bloggers, etc.), including with any news media entities or representatives in the Complaint, and all Documents relating to these Communications.  (ECF Nos. 46-4 at 9; 46-5 at 9.)  Through their joint "Response to Request No. 12," Defendants indicate:

> All communications between AutoFlex and news media entities and bloggers were based on phone calls requesting an interview concerning our Protest of the MCPS electric school bus contract as it escalated through the Appeal and Circuit Court Process into a 64-Page Judges Opinion and Ordered Remand currently pending a Judicial Review of the 2021 evaluations and scoring that awarded RFP 9462.1 to HET MCPS LLC an affiliate of ATB school bus dealer that was terminated by MCPS General Counsel. . . .

(ECF No. 46-9 at 8–9.)  Plaintiffs complain that Defendants failed to produce documents and communications responsive to this request, and wrongly narrowed this request to include only AutoFlex's protest of the MCPS contract.  (ECF No. 46-1 at 20–21.)  During the hearing, Plaintiffs conceded that Document Request No. 12 was a catchall provision and agreed to narrow Document Request No. 12 to the following: "To the extent not covered by Standard Documents Request Nos. 1 to 5, all Documents and Communications relating to Plaintiffs."

## CONCLUSION

As explained on the record during the June 4, 2025 hearing and for the foregoing reasons, it is this 6th day of June, 2025, hereby **ORDERED** that:

(1) Plaintiffs' Corrected Second Request for Entry of Default Against Defendants (ECF No. 34) is **DENIED AS MOOT**, in light of Defendants' belatedly filed Answer (ECF No. 43);

(2) Plaintiffs' Motion for Sanctions of Default Against Defendant Luis MacDonald (ECF No. 45) is **DENIED**, in light of Defendants' confirmation that the responses to Plaintiffs' request for documents and interrogatories were responsive on behalf of both Defendants;

(3) Plaintiffs' Motion for Forensic Imaging (ECF No. 46) is **GRANTED** without opposition, subject to the modification that Plaintiffs agree to bear the cost of imaging in the first instance, but reserve all rights to later seek to recover costs and expenses associated with the Imaging Motion, including (but not limited to) recovering costs and expenses based on further discovery violations and/or evidence of spoliation, and the forensic imaging should, if possible, be done remotely, or, if not remotely, onsite at the Defendants' place of business to avoid any undue burden to Defendants;

(4) The parties are **INSTRUCTED** to follow the Court's rulings regarding their discovery dispute as explained on the record and further detailed in this Memorandum Order; and

(5) The scheduling order governing this case is **MODIFIED** as follows:

| Event | Date |
|---|---|
| Plaintiffs' Rule 26(a)(2) disclosures | September 26, 2025 |
| Defendants' Rule 26(a)(2) disclosures | October 24, 2025 |
| Plaintiffs' rebuttal Rule 26(a)(2) disclosures | November 7, 2025 |
| Rule 26(e)(2) supplementation of disclosures and responses | November 14, 2025 |
| Discovery deadline; submission of status report | December 15, 2025 |
| Requests for admission | January 9, 2026 |
| Dispositive pretrial motions deadline | January 23, 2026 |
| Opposition to dispositive pretrial motions deadline | February 6, 2026 |
| Replies in support of dispositive pretrial motions deadline | February 20, 2026 |
| Motions hearing | To be scheduled (if necessary) by further correspondence from this Court |
| Pretrial conference | April 14, 2026 at 3:00 PM |
| Jury trial (5–7 days estimated) | Commencing April 20, 2026 at 9:30 AM |

/s/ _____

Richard D. Bennett
United States Senior District Judge